# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4403 | **DATE** | 3/3/2004 |
| **CASE TITLE** | | Ajayi vs. Aramark Business Services | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendant's motion for partial summary judgment is denied. Moreover, because the Court did not rely on any of the evidence challenged in them, all of the parties' motions to strike are dismissed as moot. The parties are ordered to appear before the Court at a status hearing on March 11, 2004 at 9:30a.m. in courtroom 1838. Parties are to prepared to discuss whether they want a settlement conference with the court or to set a date for final pretrial order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 0 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

MAR 0 4 2004

| | | |
|---|---|---|
| LOLA AJAYI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 4403 |
| | ) | Paul E. Plunkett, Senior Judge |
| ARAMARK BUSINESS SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on defendant's Federal Rule of Civil Procedure 56(c) motion

for partial summary judgment on the only remaining claims in this suit: that plaintiff was discharged

in retaliation for filing an EEOC charge. For the reasons set forth below, the motion is denied.

## Facts[1]

Plaintiff was hired by defendant, a food services provider, in March 1996. (Pl.'s LR

56.1(b)(3)(A) Stmt. ¶¶ 2, 5.) In June 1998, plaintiff began working at one of the dining facilities at

defendant's Harris Bank account. (Id. ¶ 5.) Greg Kaminski was the general manager for that

account. (Id. ¶ 8.) Ramiro Lopez was operations manager and plaintiff's immediate supervisor. (Id.

¶ 11.)

---

[1]For a full recitation of the facts see Ajayi v. Aramark Bus. Servs., Inc., No. 00 C 4403, 2002
WL 1160945 (N.D. Ill. May 30, 2002).

On February 14, 2000, plaintiff filed a charge of discrimination against defendant with the EEOC. (Id. ¶ 17.) During the course of the EEOC's investigation, the agency asked plaintiff to provide it with copies of employee time cards to refute defendant's assertion that employees' hours were cut because the Harris Bank account was losing money. (Exs. Supp. Def.'s Mot. Partial Summ. J., Ex. 1, Ajayi Dep. at 84-85.) Plaintiff complied with the EEOC's request, a fact that defendant did not discover until she was deposed in connection with this case on April 3, 2001. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 18.) If it had known about the time card copying earlier, defendant says, it would have fired plaintiff for it. (Def.'s LR 56.1(a)(3) Stmt. ¶ 20.)

On May 17, 2000, Kaminski and Lopez gave plaintiff a written warning about her poor attitude and inappropriate behavior towards customers. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 21, 24.) The warning called for a three-day suspension and plaintiff's transfer to a lesser position in another facility. (Id. ¶ 21.)

After receiving the warning, plaintiff prepared a resignation letter. (Id. ¶ 25.) When plaintiff returned to work on May 22, 2000, she brought the resignation letter with her. (Id. ¶ 28.) When she arrived, Kaminski told her that her employment was terminated. (Id. ¶ 29.) After she learned of the termination, plaintiff gave the resignation letter to Kaminski. (Id.) Plaintiff says she did not intend to use the resignation letter unless she was fired and had prepared it to "mitigate the negative repercussions of being fired." (Id. ¶¶ 31-32.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

### Discussion

Defendant contends that it is entitled to summary judgment on damages because the evidence establishes that plaintiff was planning to resign the day she was fired. Alternatively, defendant says, the after-acquired evidence doctrine limits plaintiff's damages to back pay through April 3, 2001, the date defendant learned that plaintiff had engaged in misconduct that would have provoked her termination. Neither contention is persuasive.

Defendant's argument concerning plaintiff's intent to resign is based on the following undisputed facts: (1) plaintiff prepared her resignation letter because of the May 17, 2000 conversation with Kaminski regarding her suspension (Exs. Supp. Def.'s Mot. Partial Summ. J., Ex. 1, Ajayi Dep. at 172); (2) she brought the letter to work with her on May 22, 2000 and gave it to Kaminski (id. at 172-73); and (3) she did not say either in the letter or verbally that she was resigning solely because of the threat of termination (id.; id., Ex. 12, 5/12/00 Resignation Letter).

Certainly, that evidence supports the inference that plaintiff would have resigned regardless of defendant's actions. But that is not the only evidence that has been proffered on this issue. Plaintiff submitted an affidavit that says she had no intention of resigning unless she was fired and

only prepared the letter so she could tell future employers that she had quit. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 12, 14.) Moreover, it is undisputed that plaintiff did not give her resignation letter to Kaminski until after he told her she was fired, had not looked for another job prior to being fired and had not told anyone before that time that she planned to quit. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 13, 15-16.) All of that evidence supports the inference that plaintiff's "resignation" was prompted by her termination. In short, there is a genuine issue of material fact on whether plaintiff would have resigned on May 22, 2000, even if she had not been fired. As a result, defendant's motion to preclude plaintiff from recovering any damages on that basis is denied.

Defendant's alternative argument is that plaintiff's damages are limited to back pay through April 3, 2001, the date that defendant learned she had removed photocopies of other employees' time cards from work premises without its permission, conduct that it says would have cost her her job. See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362 (1995) (limiting remedy for employment discrimination to back pay from the date of the unlawful discharge to the date the employer discovered that the employee had committed misconduct that would have provoked a legitimate termination). Plaintiff says that McKennon is inapplicable because she copied the time cards for the EEOC's use in its investigation of her charge, conduct that is protected by Title VII.

Title VII prohibits employers from retaliating against an employee for her "oppos[ition to] any practice made . . . unlawful" by the statute or "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to the statute. 42 U.S.C. § 2000e-3. Defendant focuses on the first clause of that section, arguing that plaintiff's transmission of its documents to the EEOC is not a protected demonstration of her opposition to its allegedly unlawful employment practices.

-4-

In support of its argument, defendant cites Jefferies v. Harris County Comty. Action Ass'n, 615 F.2d 1025 (5th Cir. 1980) and O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756 (9th Cir. 1996). The female plaintiff in Jefferies, believing she was the victim of discrimination, copied a personnel form pertaining to a male employee that indicated he had already been hired for a position that had just been posted. The plaintiff sent a copy of the form and other materials to the chairman of the defendant's personnel committee. Plaintiff was subsequently terminated for her unauthorized dissemination of company documents, action that she claimed violated the "opposition to" portion of Title VII's retaliation provision.

The Fifth Circuit held that plaintiff's actions were not protected by the statue. In its view, "employee conduct [must] be reasonable in light of the circumstances" and must be balanced against "the employer's right to run his business." Id. at 1036 (internal quotation marks and citation omitted). Because the plaintiff had not "show[n] any need for surreptitious copying and dissemination of the documents," the court held that the employer's interest in maintaining the confidentiality of its records outweighed her interest in protesting its actions. Id. at 1036-37. Thus, the court said, plaintiff's actions were not protected by the "opposition to" clause of Title VII's retaliation provision. Id.

The Ninth Circuit reached a similar conclusion in O'Day. The plaintiff in that case, after having been denied a promotion, searched for his personnel file in his supervisor's office. He did not find the file, but did find other documents, including a list ranking employees for layoff, that he decided to copy. Moreover, after copying the documents, O'Day showed them to one of the employees who had been slated for layoff. Defendant discovered plaintiff's conduct during the

course of discovery in his subsequent ADEA suit, and argued that his remedy must be limited under the holding in McKennon.

The Ninth Circuit agreed. According to that court, "[a]n employee's opposition activity is protected only if it is reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." Id. at 763 (internal quotation marks and citation omitted). O'Day's conduct, "sneaking into his supervisor's office, stealing sensitive documents pertaining to employment matters, and showing them to one of the very people affected by the documents," was not, the court said, a "reasonable attempt[] to contest [his] employer's discriminatory practices." Id. at 762, 763.

The situation in this case, however, is different from that in Jefferies and O'Day. The plaintiffs in those cases copied documents to which they did not normally have access and gave them to people who were wholly unconnected to the EEOC conciliation process. In this case, however, there is evidence that plaintiff copied documents to which she routinely had access, solely because the EEOC requested them in the course of investigating her charge. (Exs. Supp. Def.'s Mot. Partial Summ. J., Ex. 1, Ajayi Dep. at 84-85.) That evidence supports the inference that, by copying the documents, plaintiff was "assist[ing], or participat[ing] . . . in an [EEOC] investigation, proceeding, or hearing," conduct that is protected by the second clause of Title VII's retaliation provision. 42 U.S.C. § 2000e-3; see Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 373 (5th Cir. 1998) (noting that Title VII prohibits retaliation for "assistance and participation *in any manner* in an investigation, proceeding or hearing under the statute") (emphasis in original) (internal quotation marks and citation omitted); Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 n.4 (4th Cir. 1998) (stating that the participation clause protects activities that are "essential to the machinery set up by Title VII" and provides a broader scope of protection than the

opposition clause) (internal quotation marks and citation omitted). Because there is evidence to suggest that defendant could not legitimately have fired plaintiff for complying with the EEOC's request for documents, it can take no refuge in McKennon.

Moreover, even if plaintiff's conduct were clearly unprotected, defendant could only prevail on this motion if it could demonstrate that it would have terminated plaintiff for that conduct. Id. Once again, however, the evidence is mixed. Defendant's employee handbook says that removal of company records is grounds for discharge and Kaminski swears he would have fired plaintiff on that basis had he known about her conduct. (Exs. Supp. Def.'s Mot. Partial Summ. J., Ex. 2, Kaminski Supp. Decl. ¶¶ 21-22; id., Ex. 8, Employee Handbook at 16-17.)

But plaintiff did not remove the actual time cards, she took photocopies of them. That may seem like a distinction without a difference, but the record suggests that it is not. Kaminski admits that defendant does not have a policy forbidding employees from photocopying company documents or from removing such copies from the premises to work with them. (Exs. & Supp. Doc. Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. 12, Kaminski 2003 Dep. at 9-10.) He also admits that plaintiff was responsible for totaling the time cards for certain employees and could have performed those calculations at home, using copies of the time cards, without violating any company policies. (Id. at 9-11.) In addition, Kaminski admits that defendant does not have a policy forbidding employees from complying with document requests from government agencies. (Id. at 12.) In fact, Kaminski says that defendant would not fire an employee for complying with an EEOC request for documents, which is exactly what plaintiff says she was doing. (Id.; Exs. Supp. Def.'s Mot. Partial Summ. J., Ex. 1, Ajayi Dep. at 84-85.) Finally, defendant has proffered no evidence to suggest that it has ever fired an employee for taking photocopies of company documents off premises for any reason, let

alone to comply with a government agency's request. See Sheehan v. Donlen Corp., 173 F.3d 1039, 1048 (7th Cir. 1999) (stating that "the [McKennon] inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not") (internal quotation marks and citation omitted). All of that evidence casts doubt on defendant's assertion that plaintiff's misconduct was "of such severity that [she] . . . would have been terminated on those grounds alone if [defendant] had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63. Thus, even if plaintiff's conduct were plainly improper, disputed fact issues would still preclude defendant from prevailing on its motion to limit her damages.

## Conclusion

For the reasons set forth above, defendant's motion for partial summary judgment is denied. Moreover, because the Court did not rely on any of the evidence challenged in them, all of the parties' motions to strike are dismissed as moot. The parties are ordered to appear before the Court at a status hearing on March 11, 2004 at 9:30 a.m. in courtroom 1838.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: 3-3-04